IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 7, 2006

## SHON MAURICE PIERCE v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Dyer County
No. C03-262    Lee Moore, Judge**

---

**No. W2005-01493-CCA-R3-PC  - Filed March 16, 2006**

---

The petitioner, Shon Maurice Pierce, appeals the Dyer County Circuit Court's denial of his petition for post-conviction relief for second degree murder and resulting twenty-year sentence. He contends that he received the ineffective assistance of counsel because his trial attorney allowed him to plead guilty before the trial court held a hearing on his motion to suppress his confession. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Timothy Boxx, Dyersburg, Tennessee, for the appellant, Shon Maurice Pierce.

Paul G. Summers, Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; and Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

On June 20, 2003, the petitioner's wife was found dead in their motel room in Dyersburg. The victim's hands and feet were bound. Thereafter, the Dyer County Grand Jury indicted the petitioner for first degree premeditated murder and felony murder. The trial court appointed counsel to represent the petitioner, and counsel filed a motion to suppress the petitioner's confession to police. Before the trial court held a hearing on the motion, the petitioner pled guilty to one count of second degree murder and received a twenty-year sentence as a violent offender. Subsequently, the petitioner filed a petition for post-conviction relief, alleging that he received the ineffective assistance of counsel because his trial attorney allowed him to plead guilty before the suppression hearing. In his pro se petition, the petitioner claimed that the police failed to advise him of his

Miranda rights and that he invoked his right to counsel.

At the evidentiary hearing, the petitioner's trial attorney testified that he was appointed to represent the petitioner and that he listened to the petitioner's audiotaped confession and read the police investigation reports. According to the reports, the petitioner and his wife had been staying at the Dyersburg motel. A motel employee found the victim dead in the couple's room and discovered that the petitioner was missing. Prior to the victim's death, the petitioner had been charged with domestic assault against her. In that case, the petitioner had bound the victim. The victim in the present case had been bound in a similar manner.

Counsel testified that during the petitioner's confession to police, he said, "I think my family's gonna hire me a lawyer" and "I think I might need to talk to a lawyer before I answer any more of y'alls questions." Based upon those statements, counsel filed a motion to suppress the confession. Counsel researched the law and concluded that the motion to suppress "could go either way." He told the petitioner that the defense had a good argument for suppressing the confession, but he could not promise that the trial court would grant the motion. He also told the petitioner that even if the trial court granted the motion, the State had strong circumstantial evidence against him. The petitioner wanted to negotiate a plea with the State "right off the bat" and wanted to plead guilty to second degree murder. Before the trial court held a hearing on the motion to suppress, counsel approached the prosecutor about a plea agreement. The prosecutor told counsel that he would discuss a second degree murder plea with the victim's family but that the State would not agree to a plea if the petitioner proceeded with his motion to suppress. Based on the prosecutor's warning, counsel postponed the suppression hearing, hoping that the State would make a plea offer. The State finally offered to let the petitioner plead guilty to second degree murder. Counsel approached the petitioner with the offer and gave him a couple of days to think about it. The petitioner told counsel that he opened his Bible, read a verse that mentioned twenty years, and decided it was a sign to accept the State's offer.

Counsel testified that if the case had proceeded to trial, he would have argued that the petitioner was using drugs and did not premeditate the killing. He said that the petitioner's flight from the motel soon after the killing and a letter that the petitioner wrote to the prosecutor without counsel's consent weighed against the petitioner's defense. In the letter, the petitioner stated that he did not mean to hurt the victim, that they had been using drugs, and that he wanted to plead guilty to second degree murder in return for a fifteen-year sentence. Counsel believed that the victim's being bound and gagged favored the State's theory of premeditation. Despite strong evidence of first degree murder, counsel hoped that a jury would convict the petitioner of second degree murder or voluntary manslaughter. Counsel stated that the petitioner had signed a waiver of rights form when he confessed to police.

On cross-examination, counsel testified that he had been licensed to practice law since 1976 and that he had been a prosecutor or assistant public defender since 1988. Counsel said that the petitioner was evaluated at Middle Tennessee Mental Health Institute, and the results of the evaluation did not support an insanity or diminished capacity defense. The petitioner was very

intelligent and articulate, and counsel never got the impression that the petitioner did not understand anything. He advised the petitioner that the petitioner was facing a life sentence if convicted of first degree murder. He also told the petitioner that even if the jury convicted him of second degree murder, the presumptive sentence for the Class A felony was twenty years, and the trial court could use the petitioner's prior convictions to enhance the sentence.

The petitioner testified that counsel should have proceeded with the suppression hearing because the police did not read him his Miranda rights and because he requested a lawyer. He said that counsel told him the suppression hearing "could go any way" but that he told counsel he still wanted the hearing. He stated that near the end of his confession, the police read him his Miranda rights and he signed a waiver of rights form. He acknowledged that he wrote a letter to the prosecutor in which he asked to plead guilty to second degree murder and receive a fifteen-year sentence. Counsel told him that he could be convicted of felony murder, and the petitioner "didn't want to take my chances [with] that." Nevertheless, he testified that he did not want to plead guilty. The petitioner testified that he wanted to take responsibility for killing the victim, that he did not stuff a towel in the victim's mouth in order to kill her, and that he did not commit first or second degree murder. He contended that voluntary manslaughter would have been a more appropriate plea.

The petitioner acknowledged that an eyewitness saw him at the motel with the victim and that counsel discussed premeditation with him. Counsel also told him that the petitioner's leaving the motel after the killing could be "a big part in the case" but that the victim's autopsy report would favor the defense. The petitioner testified that he wanted to go to trial and that he was planning to testify. He said that he did not want to accept the State's plea offer and that he told counsel the State was trying to "scare me away from having my motion [hearing]." He acknowledged that he told the trial court at the guilty plea hearing that he was pleading guilty of his own free will. He also acknowledged that when the trial court asked him if he was satisfied with his attorney, he said yes. He explained that he said yes because he did not want to cause a commotion in court and because he did not want to go to trial with his attorney representing him. He said that based upon a passage in the Bible, he decided to accept the State's plea offer.

On cross-examination, the petitioner acknowledged that attorneys should not give their clients false hope. He also acknowledged that he sent a letter to counsel shortly after his arrest in which he wanted to know if the State would agree to a plea of second degree murder and that he wrote a letter to the prosecutor in which he asked to plead guilty to second degree murder in return for a fifteen-year sentence. Counsel filed a motion to suppress, a motion hearing was scheduled several times, and the hearing was postponed each time. He acknowledged that counsel told him the prosecutor would not agree to a second degree murder plea if the petitioner proceeded with the suppression hearing. He also acknowledged that he was in court many times regarding his case and that he never told the trial court he had a problem with counsel's representation. He acknowledged that as a result of his plea, two additional charges against him were dismissed and that one of the charges was for possessing contraband in a penal institution, which requires consecutive sentencing if convicted.

-3-

The post-conviction court concluded that the petitioner "got just exactly what you wanted as far as the plea was concerned." The court determined that counsel discussed the situation regarding the plea with the petitioner, that the petitioner fully understood what he was doing, and that the petitioner's decision not to pursue a hearing on the motion to suppress was the petitioner's and counsel's strategy. Thus, the trial court concluded that counsel did not render deficient performance. The post-conviction court also noted that it had reviewed the guilty plea hearing transcript. According to the transcript, the trial court advised the petitioner of his rights, the petitioner had the opportunity to voice any problems with his plea, and the petitioner stated he was pleading guilty voluntarily. The petitioner also told the trial court that he was satisfied with his attorney's representation and that his attorney had done everything the petitioner had requested. The court ruled that the petitioner's guilty plea had been knowing and voluntary and denied post-conviction relief.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id. "To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad, 938 S.W.2d at 370.

In this case, the post-conviction court concluded that counsel did not render deficient performance. We agree. Counsel testified that the petitioner was anxious to negotiate a plea with the State. Specifically, the petitioner wanted to plead guilty to second degree murder in exchange

for a fifteen-year sentence.  The State introduced into evidence letters that the petitioner had written to counsel and the prosecutor.  The letters support counsel's testimony, demonstrating that the petitioner wanted to plead guilty to second degree murder in return for a fifteen-year sentence.  The State offered to let the petitioner plead guilty to that offense and receive a twenty-year sentence on the condition that the petitioner abandon his motion to suppress.  The petitioner thought about the offer and decided to accept it.  Although the petitioner testified at the post-conviction hearing that he did not want to accept the offer, he also testified that he was facing a first degree murder conviction and that he "didn't want to take my chances [with] that."  Counsel and the petitioner decided to forego the motion hearing in return for the plea.  Thus, we agree with the post-conviction court that they made a strategic decision and that counsel did not render deficient performance.  See Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993) (stating that on appeal, this court will not second guess the strategic decisions of defense counsel).  The petitioner has failed to show that he received the ineffective assistance of counsel, and the trial court properly denied post-conviction relief.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE